UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GOLD COAST FLATS, LLC, an Illinois limited company, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 23-cv-03842 ) |
| SPRINTCOM LLC, a Kansas limited liability company f/k/a SPRINTCOM, INC., | ) Hon. Elaine E. Bucklo ) ) ) |
| Defendants. | ) ) ) |

DEFENDANT SPRINTCOM LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. PROC. 12(B)(6)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1
BACKGROUND ................................................................................................................. 2
LEGAL STANDARD .......................................................................................................... 4
ARGUMENT ....................................................................................................................... 5
   I.   PLAINTIFF'S OWN EVIDENCE SHOWS THAT IT WAS NOT GOING TO COMPLETE THE CONSTRUCTION ON TIME REGARDLESS OF COVID. .............. 5
CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...........................................................................................................4, 5

*Bogie v. Rosenberg*,
 705 F.3d 603 (7th Cir. 2013) ..................................................................................................5

*N. Illinois Gas Co. v. Energy Co-op., Inc.*,
 461 N.E.2d 1049 (1984) .........................................................................................................7

*Rudolph v. United Airlines Holdings, Inc.*,
 519 F. Supp. 3d 438 (N.D. Ill. 2021) ......................................................................................7

*Tabankin v. Kemper Short-Term Glob. Income Fund*,
 No. 93 C 5231, 1994 WL 30541 (N.D. Ill. Feb. 1, 1994) .......................................................5

Defendant SprintCom LLC, f/k/a SprintCom, Inc. ("Sprint" or "Defendant") respectfully submits this memorandum of law in support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss with prejudice the Complaint filed by Plaintiff Gold Coast Flats, LLC ("Landlord" or "Plaintiff"), and in support states as follows:

## INTRODUCTION

This case is about a deadline that plaintiff was never going to meet. After plaintiff didn't meet the deadline, it invoked the COVID-19 pandemic and its related restrictions. But neither the pandemic, nor the governmental restrictions that followed it, nor the labor nor supply disruptions that occurred were the cause of the plaintiff failing to meet its deadline. Instead, the pandemic was nothing more than an inapt excuse.

For years, the plaintiff leased a retail store to Sprint. When plaintiff desired to renovate the building where Sprint's store was located, Sprint agreed. But Sprint's agreement came with an important condition. The renovation was to be done within 12 months, i.e., by April 1, 2020.

Plaintiff missed that deadline. Sprint timely gave notice that it was terminating the lease as a result. Plaintiff disputes that termination.

But as the April 1, 2020 deadline approached, and for some time after, plaintiff was in no position to meet it. Supplies were not yet scheduled for delivery. Contractors were not in a position to complete their work. Preparatory activities, like floor preparation work, were not even scheduled until the end of March. As the documents attached to the complaint show, there was no way plaintiff would meet the deadline, pandemic or not.

Plaintiff's theory is that the force majeure clause excuses it from meeting the contractually-agreed construction completion deadline. Then, because of that excuse, plaintiff contends that it is able to enforce the rest of the parties' lease against Sprint. On that theory, plaintiff claims that it is

1

entitled to collect years' worth of rent under a lease for a store that Sprint never moved back into, and that Sprint timely terminated. Plaintiff cannot argue that Sprint's termination was invalid, as its own complaint demonstrates that it was never going to meet the April 1, 2020 deadline.

The complaint should be dismissed.

## BACKGROUND

The following facts are taken from the Complaint, together with its exhibits.[1] Plaintiff entered into an original lease (the "Lease") with Clear Wireless LLC on November 20, 2009 for Store 2145, 2,005 square feet of space at 1201 N Clark St., Chicago, IL 60610. (Filing No. 1-1, at CM/ECF pp. 16, 139) ("Cmplt.") (P. Exs. 1, 3.) Sprint took an assignment of that lease in 2011. (Cmplt. ¶ 9, at CM/ECF p. 2.) As the 10-year term of the lease was coming to an end, plaintiff wished to renovate the entire premises to build luxury apartment buildings. These renovations required that Sprint lose access to its building, so the two parties entered into an Amendment to the Lease ("Amendment") on April 1, 2019. (Cmplt., at CM/ECF p. 139.) (P. Ex. 3.) The Amendment required that Sprint "temporarily close" and then "re-open . . . upon completion of Landlord's Work and removal of all scaffolding on and around the Premises." (*Id.*)

The Amendment also included a "Duration" clause, which explained that "[s]ubject to Force Majeure (as defined in the initial Lease), if Landlord fails to complete Landlord's Work within 12 months of the Initial Close Date, [Sprint] shall be entitled to terminate this Lease upon thirty (30) days prior written notice to Landlord." (Cmplt., at CM/ECF p. 140.) (P. Ex. 3.)

Twelve months after the Initial Close Date, on April 1, 2020, the construction was still in progress. (*See* Cmplt., at CM/ECF pp. 148-190.) (P. Exs. 5, 6.) Because construction had not

---

[1] Such facts are presumed true for purposes of this motion only. Sprint reserves all rights to raise any factual disputes regarding these allegations or any other matter.

2

finished, Sprint exercised its right under the Amendment to give notice of termination of the Lease. (*See* Cmplt., at CM/ECF p. 148.) (P. Ex. 5.) The termination was to be effective May 31, 2020, 40 days after Sprint gave the notice, and Sprint agreed to surrender possession by that date. (*Id.*)

Plaintiff refused to accept Sprint's termination, with its attorneys writing an April 24, 2020 letter telling Sprint that it "does not have a right to terminate the Lease," citing the "Force Majeure" clause in the initial lease. (Cmplt., at CM/ECF p. 194.) (P. Ex. 7.) Plaintiff claimed that the time to complete the work was "subject to extensions equal to the duration of the governmental pandemic orders" and requested that Sprint "provide documentation" to show "that the Coronavirus global pandemic is not an act of God, that the closure orders are not governmental regulation or control, or that the logistical delays caused by manufacturing closures and shifts in logistics were somehow within the reasonable control of Landlord." (*Id.*) Sprint responded to that letter on April 28, 2020, standing by its right to terminate the Lease, explaining that plaintiff "has represented to Sprint that its activities relating to the Landlord Work were and are exempted from the Executive Order as Essential Infrastructure and Essential Business and Operations." (Cmplt., at CM/ECF p. 271.) (P. Ex. 8.) Sprint further explained that the March 20, 2020 government order did not restrict plaintiff from doing work, it simply required that any resident of Chicago having COVID-19 shelter in place, and that plaintiff continued to work at the site throughout all of March and April, implying that it was using the pandemic as an unrelated excuse for not finishing the work on time. (*Id.*) Sprint requested that plaintiff provide any documentation that supported its claim that the pandemic had been the cause for it to not finish its work. (*Id.*)

Plaintiff responded to Sprint's request in a May 8, 2020 letter, attaching ten pieces of correspondence from contractors and subcontractors relating to the pandemic. (Cmplt., at CM/ECF p. 273.) (P. Ex. 9.) Sprint reviewed the evidence and explained in a May 12, 2020 letter that none

3

of the evidence supported plaintiff's claim that the pandemic caused its failure to complete its work by April 1. (Cmplt., at CM/ECF p. 307.) (P. Ex. 10.) In particular, as Sprint explained, none of the documents "established a material adverse impact on [plaintiff's] ability to complete the Landlord Work by the Completion Date." (*Id.*)

Plaintiff, however, continued to refuse to accept Sprint's termination, reiterating its position in a May 18, 2020 letter. (Cmplt., at CM/ECF p. 309.) (P. Ex. 11.) Sprint stood by the termination, sending a May 20, 2020 letter to plaintiff requesting access to the premises in order to move out of the property by May 31. (Cmplt., at CM/ECF p. 311.) (P. Ex. 12.) Plaintiff still refused to acknowledge Sprint's termination, but allowed it access to the premises to move out by May 31. (Cmplt., at CM/ECF pp. 313-315.) (P. Ex. 13.) Then, on June 16, 2020, plaintiff sent Sprint a letter claiming that the work had been substantially completed and that it was therefore delivering the premises to Sprint. (Cmplt., at CM/ECF p. 317.) (P. Ex. 14.) Sprint had already given 30 days' notice, terminated the lease, and moved out of the premises by that date, and did not go back to the property to move back in under what was understood to be a terminated lease.

More than three years after Sprint terminated the lease, plaintiff brought this action for nonpayment of rent. Plaintiff seeks damages under the lease for non-payment of rent, for the time period following Sprint's termination of the lease. Plaintiff's theory is that the lease's force majeure clause negates Sprint's lawful termination of the lease. Therefore, plaintiff contends, Sprint remained liable for rent this entire time, even though it never moved back in.

Sprint moves to dismiss under Rule 12(b)(6).

## LEGAL STANDARD

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Courts accept well-pled factual allegations

4

in the Complaint, but are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. Mere "labels and conclusions" are insufficient to state a claim. *Id*.

**ARGUMENT**

Plaintiff admits that it failed to complete its work by April 1, 2020, as required by the Amendment. But it argues that such delay should be excused because the completion date was subject to the original lease's force majeure clause. That argument fails. Plaintiff will not be able to show that COVID-19 was the cause of its failure to tender the premises on time. Its own complaint shows that its construction schedule, regardless of the pandemic, had its contractors working well into April, and that any pandemic-related delays could not have changed the fact that plaintiff was always going to miss the April 1 deadline.

**I.     PLAINTIFF'S OWN EVIDENCE SHOWS THAT IT WAS NOT GOING TO COMPLETE THE CONSTRUCTION ON TIME REGARDLESS OF COVID.**

Plaintiff's own exhibits show that the pandemic was not a cause of its failure to finish its work by April 1, 2020. In fact, its exhibits show that the schedule for work to be completed went well into April, regardless of the pandemic. Sprint's Motion to Dismiss therefore should be granted. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); *Tabankin v. Kemper Short-Term Glob. Income Fund*, No. 93 C 5231, 1994 WL 30541, at *3 (N.D. Ill. Feb. 1, 1994) ("While it is true that well-pleaded factual allegations must be taken as true at the motion to dismiss stage, we are not required to ignore facts contained in the exhibits to the complaint that undermine the plaintiff's claim.") (citing *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir.1992).).

Sprint asked plaintiff to produce all evidence it had of pandemic-related delays in their April and May 2020 correspondence. Plaintiff has since had over three years to procure and

5

produce any additional evidence it has located that shows the pandemic was the cause of its delay. Plaintiff attaches the same ten pieces of correspondence to its complaint that it previously attached to its letter to Sprint in 2020. ([Cmplt., at CM/ECF p. 273.](Cmplt., at CM/ECF p. 273.)) (P. Ex. 9.)

Such correspondence does not show that the pandemic was the cause of its construction delay. Instead, it shows the opposite.

The correspondence that plaintiff attaches to the complaint in its Group Exhibit 6 shows how plaintiff was never going to finish construction by April 1, 2020, regardless of whether or not there was a pandemic:

- March 31, 2020 email from a sign artist where the contractor wrote, "we're not able to specifically state if delays from our suppliers will impact delivery dates for the 1201 N. Clark project, but I suspect that there will be some delays." ([Cmplt., at CM/ECF p. 178.](Cmplt., at CM/ECF p. 178.)) In other words, there were not yet delays as of March 31, 2020, ***the day before*** plaintiff needed to complete construction. The only plausible reading of such letter is that the signage was already scheduled to be delivered later, pandemic or not.

- April 1, 2020 email from the general contractor explaining that the delivery of doors, originally scheduled for the third week of April, was delayed. ([Cmplt., at CM/ECF p. 177.](Cmplt., at CM/ECF p. 177.)) This correspondence was not only sent on the completion deadline, but it showed that the initial schedule for arrival of the doors was to be in April, weeks after the construction deadline.

- April 3, 2020 email from the general contractor mentioning a delay with elevator installation. That delay impacted the original schedule, quoted at the bottom of the email chain. In the pre-delay email, the general contractor wrote to confirm "that

6

we're still on schedule with the dates that we discussed: Install complete on 4/10; Adjusting beginning on 4/17; Final inspection on 4/22." (Cmplt., at CM/ECF p. 172.) That email is an admission from plaintiff that even if it met its schedule, the elevators would not have been fully installed until April 22, three weeks after the completion deadline.

- April 17, 2020 letter from glass and mirror company, again mentioning forward looking delays, explaining that "we have all material in our shop for the 1201 N Clark, Chicago, IL project to continue" and clarifying that changes "***going forward***" will result in pandemic-related delays (emphasis added). (Cmplt., at CM/ECF p. 162.)

The foregoing correspondence shows that the pandemic could not have been the reason that the construction project continued past April 1, 2020. And, none of the other six emails that plaintiff included in its evidence support its allegation that the pandemic was a cause of it failing to complete construction on time.

In the original schedule, ***floor preparation*** work on the fourth floor was to be completed on March 30, 2020. Significant work would have had to follow floor preparation work, much of which was highlighted in the attached correspondence. That work includes finished flooring, roofing, siding, countertop work, fixtures installation, plumbing, siding, door hanging, elevator installation, and more. Pointing to the pandemic-related delays is irrelevant to excuse plaintiff's inability to comply with its duties under the Amendment. Courts reject arguments based on force-majeure excuses as in the case here when the cited event did not cause the breach of contract. *See Rudolph v. United Airlines Holdings, Inc.*, 519 F. Supp. 3d 438, 449–50 (N.D. Ill. 2021) (rejecting defendant's force majeure excuse partly because COVID restrictions did not "directly and

proximately cause[]" the breach of contract); *N. Illinois Gas Co. v. Energy Co-op., Inc.*, 461 N.E.2d 1049, 1058 (1984) (striking force majeure affirmative defense because the event did not "clearly direct or prohibit an act which proximately cause[d] non-performance or breach of a contract").

The materials attached to the complaint demonstrate that plaintiff never could have completed its construction work by April 1, 2020, even if there had been no pandemic. For that reason alone, plaintiff has no basis under the lease to avoid Sprint's notice of termination. Because Sprint's notice of termination is effective, the complaint fails to state a claim and must be dismissed.

## CONCLUSION

The complaint, together with its exhibits, demonstrate that there is no set of facts on which plaintiff can state a claim against Sprint. Accordingly and for the foregoing reasons, defendant Sprint respectfully requests that the Court dismiss plaintiff's complaint with prejudice and without leave to replead.

Date: June 30, 2023

Respectfully submitted,

By: */s/ Jack O. Snyder, Jr.*

Steven J. Yatvin
steven.yatvin@bfkn.com
Jack O. Snyder, Jr.
jack.snyder@bfkn.com
Jonathan L. Baker
jonathan.baker@bfkn.com
BARACK FERRAZZANO KIRSCHBAUM
    & NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
Firm No. 43707
(312) 984-3100 (phone)
(312) 984-3150 (fax)

*Attorneys for Defendant*