IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| GOLD COAST FLATS, LLC,<br>an Illinois limited company,<br><br>    *Plaintiff*,<br><br>-vs-<br><br>SPRINTCOM, LLC,<br>a Kansas limited liability company<br>f/k/a SPRINTCOM, INC.,<br><br>    *Defendant*. | Case No.:23-cv-03842<br><br>Hon. Elaine E. Bucklo |

**PLAINTIFF – GOLD COAST FLATS, LLC'S
RESPONSE TO DEFENDANT – SPRINTCOM, LLC'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6)
AND MEMORANDUM OF LAW**

**NOW COMES** the Plaintiff, **GOLD COAST FLATS, LLC**, an Illinois limited liability company (hereinafter referred to as the "Plaintiff," "Gold Coast," or "Landlord"), by and through its attorneys PERL & GOODSNYDER, LTD., and pursuant to Fed. R. Civ. P. 12(b)(6) and for its Response respectfully requests this Court deny the Motion to Dismiss pursuant to Rule 12(b)(6) brought by the Defendant, **SPRINTCOM LLC**, a Kansas limited liability company f/k/a **SPRINTCOM, INC.**, (hereinafter referred to as "Defendant," "Sprint," or "Tenant"). In support thereof, Plaintiff states as follows:

**I.     INTRODUCTION AND PROCEDURAL HISTORY.**

Plaintiff filed this breach of contract action against Defendant in the Circuit Court of Cook County as Case Number 2023 L 004854 on May 10, 2023.[1] (Doc. 1 at Ex. A ("Complaint").) The

---

[1] On June 16, 2023, Sprint filed its Notice of Removal based upon diversity jurisdiction: Gold Coast did not object. In this diversity case, Illinois law substantive law applies. *Skyrise Constr. Grp., LLC v. Annex Constr. LLC*, 956 F.3d 950, 956 (7th Cir. 2020).

Complaint alleges that Sprint breached its commercial lease with Gold Coast by failing to pay rent due in the amount of $638,598.79, as of the date of the filing of the suit, plus reasonable attorney's fees and statutory prejudgment interest. (See Complaint at ¶ 60.) On November 20, 2009, Gold Coast entered into a commercial lease ("Lease") with Sprint's predecessor for a retail space ("Leased Premises") located within Plaintiff's building located at 1201 North Clark Street, Chicago, Illinois ("1201 N. Clark Building"). (Complaint at ¶ 7.) Through a series of transactions between Sprint and its predecessors and/or affiliated entities, Sprint assumed all of the rights and responsibilities of the Lease with Gold Coast. (Complaint at ¶ 9, 17.)

On or about March 29, 2019, <u>with the term of the Lease set to expire on March 31, 2020</u>, Sprint entered into an agreement with Gold Coast entitled "First Amendment to Lease" ("First Amendment to Lease"), which set forth the parties' agreement to facilitate Gold Coast completing a major renovation to the entire 1201 N. Clark Building, which included converting a four story office building into a 98 unit apartment building with first floor retail, by adding four additional stories to the existing four-story structure. (Complaint at Ex. 3.) The project cost approximately $24 million, required structural reinforcements to the building to carry the additional four floors, and took approximately seventeen (17) months to complete. The construction was impacted by both international supply chain disruptions and social distancing/work-place safety protocols. Due to the complexity of the construction, Sprint agreed to temporarily close it operations at the Leased Premises during the construction referred to by the parties as the Temporary Closure period ("Temporary Closure Period"). *Id.* In turn, Sprint received *both* Gold Coast's agreement to "suspend [Sprint's] requirement to pay "Fixed Minimum Rent and Tenant's Pro Rata Share of Operation Expenses and Insurance Premiums (collectively "Rent") during the period it had vacated the Leased Premises (Complaint at Ex. 3, Par. 2), *plus an additional* 25% prorated credit for each month of the Temporary Closure Period to be applied against future Rent upon the resumption of

its operations at the Leased Premised (Complaint at Ex. 3, Par. 4.) Gold Coast *also agreed* to reimburse Sprint for "reasonable costs [that] are directly borne by Tenant, in relation to the temporary closure and re-opening of the Premises." (Complaint at Ex. 3, Par. 9.) The parties *also agreed* to an additional "catchall" provision in the First Amendment to Lease to compensate Sprint for other miscellaneous "agreed amounts incurred by [Gold Coast] in connection with the Temporary Closure Period." (Complaint at Ex. 3, Par. 11.) Due to the extensive nature of the construction to be completed at the 1201 North Clark Building, the parties agreed to permit Gold Coast twelve months (i.e., April 1, 2020) to complete the construction, expressly made subject to the *force majeure* provisions of the Lease. (Complaint at Ex. 3, Par. 10.)

Although inexplicably not discussed anywhere in the Motion to Dismiss, on March 25, 2020, with less than a week to go before the scheduled completion date of the construction at the 1201 N. Clark Building specified in the First Amendment to Lease, Sprint exercised its option to extend the Lease Term an additional five (5) years by giving written notice to Gold Coast ("March 25, 2020 Notice of Option to Extend Lease"). (Complaint at Ex. 4.) In the March 25, 2020 Notice of Option to Extend Lease, Sprint stated in pertinent part:

> This letter serves as written <u>notice to Landlord that Tenant is exercising its option to renew the above-referenced Agreement for a term of five (5) years</u> ("Option Term"). The Agreement remains in full force and effect with the <u>renewal term commencing on April 1, 2020 and ending on March 31, 2025</u>.
>
> \* \* \* \*
>
> Notwithstanding the above, Tenant will redeem any Abatement during the Temporary Closure Period and thereafter in accordance with the terms and conditions set forth in the First Amendment to Lease dated March 2019.
>
> The Agreement between the parties shall remain in full force and effect.

(Complaint at Ex. 4.) The March 25, 2020 Notice of Option to Extend Lease was signed by James R. Blain, Director of Retail Real Estate on behalf of Sprint. *Id.* Mr. Blain also signed the March 29, 2019 First Amendment to Lease on behalf of Sprint. (Complaint at Ex. 3.) Mr. Blain also signed Sprint's April 21, 2020 letter purporting to be Sprint's termination of the Lease entitled "Termination of Lease Agreement dated November 20, 2009, as amended" ("April 21, 2020 Purported Lease Termination Notice"). (Complaint at Ex. 5.)

Illinois Governor JB Pritzker issued his first executive order regarding the impending world-wide Covid-19 pandemic on March 20, 2020 (Executive Order 2020-10), which required Illinois residents to maintain social distancing and stay in their homes, except to engage in "Essential Activities, Essential Government Functions, or to operate Essential Businesses and Operations." Executive Order 2020-10 became effective on March 21, 2020 at 5:00 p.m. Executive Order 2020-10 provides in pertinent part as follows:

> 2. **<u>Non-essential business and operations must cease</u>**. *All businesses and operations in the State [of Illinois], except Essential Business and Operations* as defined below, *are required to cease all activities within the State* [of Illinois]] except Minimum Basic Operations, as defined below. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home).

(See Executive Order 2020-10 attached hereto as Exhibit A.") (Emphasis added.) Retail phone stores are *not* listed among the twenty-three (23) categories of "essential services" that were permitted to stay open pursuant to Par. 12(a)-(w) of Executive Order 2020-10. The prohibitions against "non-essential business and operations" set forth in Par. 2 of Executive Order 2020-10, which was set to expire on April 7, 2020, was extended on April 1, 2020 by Executive Order 2020-18 through April 30, 2020. And the rest folks, is history. (See Executive Order 2020-18 attached hereto as Exhibit B.) So, to put a not-to-fine a point on the matter, despite the construction at 1201

N. Clark Building not having been completed, between March 25, 2020, when Mr. Blain signed the March 25, 2020 Notice of Option to Extend Lease and exercised Sprint's option to renew the Lease for an additional five years, and his issuance of April 21, 2020 Purported Lease Termination Notice, the world of in-person retail business operations came to a screeching halt *unrelated* to the passage of the April 1, 2020 projected completion date for the construction at the Leased Premises. Nonetheless, after overcoming supply shortages, government-imposed social distancing requirements, and staffing limitations (see Complaint at Ex. 6, 7, 9, 11, and 13), on June 16, 2020, Gold Coast delivered the Lease Premises back to Sprint. (Complaint at Ex. 14.) However, despite having just weeks early exercised its option to extend the Lease which dated back to 2009 (Complaint at Ex. 1) until March 31, 2025 (Complaint at Ex. 4), Sprint refused to accept possession of the Leased Premises relying upon Mr. Blain's April 21, 2020 Purported Lease Termination Notice). (Complaint at Ex. 5.)

## II. THE STANDARDS GOVERNING FED. R. CIV. P. 12(b)(6) MOTIONS ARE STRICT.

"In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co., v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Igbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009))." *Sieving v. Continental Casualty Co.*, 535 F. Supp. 3d 762, 767 (N.D. Ill. 2021) (J. Bucklo.)

A complaint is legally sufficient when the allegations contained therein plausibly suggest entitlement to relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); see *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In ruling on a motion to dismiss a complaint under Fed. R. Civ. Pro. 12(b)(6), the court "must accept as true all of the factual allegations in the complaint," and draw all reasonable inferences in favor of the plaintiff. *Mann v. Vogel*, 707 F. 3d 872, 877 (7th Cir. 2012). A "[p]laintiff need not allege every conceivable fact to survive a motion to dismiss." *ABN AMRO, Inc. v. Capital Int'l Ltd..*, 595 F. Supp. 2d 805, 837 (N.D. Ill. 2008). A motion to dismiss challenges the sufficiency of a complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Additionally, in order to satisfy notice pleading requirements set forth in Fed. R. Civ. Pro. 8(a)(2), "a short and plain statement of the claim showing that the pleader is entitled to relief "is sufficient, and a plaintiff is not required to provide evidence with respect to its claims. *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 629 (7th Cir. 2010). To the contrary, a plaintiff satisfies this pleading burden by setting forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the required elements of the cause. *Twombly*, 550 U.S. at 545. "The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of the claim' rather than one on technicalities that might keep plaintiffs out of court." (Internal citations omitted.) *In re: Society of Insurance Co. Covid-19 Business Interruption Protection Insurance Litigation*, 521 F.Supp.3d 729 (N.D. Ill. 2021).

As the moving party, Sprint has the "burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 82, 806 (7th Cir. 2020). In ruling on Sprint's Motion to Dismiss, this issue "is not whether the plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support its claims." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). Dismissal is proper *only* if it "is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle him to relief." *James v. Prof'ls' Detective Agency, Inc.*, 876 F. Supp. 1013, 1014 (N.D. Ill. 1995).

## III. A QUESTION OF FACT EXISTS WHETHER PLAINTIFF'S PURPORTED BREACH WAS MATERIAL, THEREBY PRECLUDING THE GRANTING OF DEFENDANT'S MOTION TO DISMISS.

Sprint contends in its Motion to Dismiss that it was excused from its contractual obligations under the five year extension of the Lease set forth in the March 25, 2020 Notice of Option to Extend Lease (Complaint at Ex. 4) by Gold Coasts' failure to deliver the Leased Premises on April 1, 2020. However, even assuming *arguendo* that the Covid 19 Pandemic did *not* constitute a *force majeure* condition under the Lease (see Sect. IV below), Gold Coasts' delivery of the Leased Premises on June 16, 2020 (Complaint at Ex. 14) (in the midst of government-ordered shutdown of non-essential businesses) did *not* constitute a material breach of the parties' contracts. Furthermore, as discussed below in greater detail, resolving the question of whether or not a two month delay in delivering the Leased Premises to Sprint, particularly in the midst of mandatory Covid-19 closures of non-essential businesses, did or did not constitute a material breach will necessarily require the parties be permitted to conduct discovery and the fully developed issue presented to a trier of fact. Accordingly, Sprint's Motion to Dismiss should be denied.

In the recent case of *Freedman v. American Guardian Holdings, Inc.*, 2019 WL 3973129 (N.D. Ill. Aug. 22, 2019), District Court Judge Alonso *denied* the defendant/counter-plaintiff's motion for summary judgment on the issue of whether the plaintiff/counter-defendant had materially breached their contract. In so holding, after conducting a detailed analysis of the factors to be considered to determine the purported materiality of a contractual breach, Judge Alonso denied the motion, id at 8, finding that the question of materiality involves a question of fact that was *not* properly resolved (even after discovery) on a motion for summary judgment, holding in pertinent part as follows:

> A party that fails to perform its contractual duties is liable for breach of contract, and a material breach of the terms of the contract will serve to excuse the other party from its duty of

counterperformance." *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700-01 (7th Cir. 2002). "The test of whether a breach is 'material' is **whether it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement**, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement.' " *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1027 (Ill. App. Ct. 2012) (quoting *Vill. of Fox Lake v. Aetna Cas. & Sur. Co.*, 534 N.E.2d 133, 141 (Ill. App. Ct. 1989)). "**The breach must be so material and important to justify the injured party in regarding the whole transaction as at an end**." *Vill. of Fox Lake*, 534 N.E.2d at 141.

Determining whether a breach is material "'is **a complicated question of fact** involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.' " *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 779 (Ill. App. Ct. 2005) (quoting *Sahadi v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 706 F.2d 193, 196 (7th Cir. 1983)). "In Illinois, the Restatement of Contracts forms the basis for the state's contract law," *In re Krueger*, 192 F.3d 733, 741 (7th Cir. 1999), and numerous decisions formulate the relevant factors to consider according to section 241 of the Restatement (Second) of Contracts, which describes the following "circumstances" as "significant": "(1) the extent to which the injured party will be deprived of the benefit that he or she reasonably expected; (2) the extent to which the *injured party can be adequately compensated for the part of that benefit of which he or she will be deprived*; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) *the likelihood that the party failing to perform* or to offer to perform *will cure his or her failure, taking account of all the circumstances, including any reasonable assurances*; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of *good faith and fair dealing*." *Commonwealth Edison Co. v. Elston Ave. Properties, LLC*, 76 N.E.3d 761, 767 (Ill. App. Ct. 2017) (citing *Rubloff CB Machesney, LLC v. World Novelties, Inc.*, 844 N.E.2d 462, 467 (Ill. App. Ct. 2006) and Restatement (Second) of Contracts § 241 (1981)). The inquiry is not "mechanical" but flexible, depending on the **totality of the circumstances**, and "case law makes clear that it is impossible to provide an exhaustive, dispositive checklist of factors

> *for the trier of fact to consider in every situation*." *Elda Arnhold*, 284 F.3d at 701 (citing *Sahadi*, 706 F.2d at 198).

*Id*. at 4-5. (Emphasis added.) The court in *Freedman* went on to hold in pertinent part as follows:

> **AGH has not been able to point to any concrete prejudice or harm that it suffered based on the Freedmans' actions, which suggests that any breaches they or their employees committed were *de minimis***. *See Pacini*, 665 N.E.2d at 497; *see also Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, No. 10-CV-1122, 2015 WL 183912, at *15 (C.D. Ill. Jan. 13, 2015) ("[T]he Court finds **a breach of this obligation** [to inform the plaintiff of complaints made against her] **is inconsequential because it did not result in an actual injury to Plaintiff**. Illinois courts follow the doctrine of *de minimis non curat lex*, [which] operates to 'place outside the scope of legal relief the sorts of intangible injuries normally small and invariably difficult to measure.' ") (quoting *Pacini*, 665 N.E. 2d at 497).

*Id*. at 7. (Emphasis added.) A similar holding was applied in *Hunter Technology Corp. v. Omega Global Technologies, Inc.*, 2023 WL 3199818 (N.D. Ill. May 2, 2023), where Judge Aspen held in pertinent part as follows:

> Second, Omega has failed to show beyond dispute that any breach by Hunter was material. "**[U]nder Illinois law, the materiality inquiry focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision**." *Arnhold v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002). The parties' intent is determined by referring to the language of the agreement "and the circumstances surrounding the agreement." *Id*. at 701 (quotation marks omitted). "When considering extrinsic evidence, the factfinder should focus, in descending order of importance, on: (1) the parties' negotiations over the contract at issue; (2) their course of performance; (3) their prior course of dealing; and (4) trade usage in the relevant industry." *Id*. at 701. If the factfinder, after evaluating these factors, determines that the breached provision "was truly of such significance that the contract would not have been made if the provision had not been included," it must then "take into account the totality of the circumstances and focus on the inherent justice of the matter." *Id*. at 700–01. **To do so, the *factfinder* should consider, at a minimum, "whether the breach defeated the bargained-for objective of the**

> parties; whether the non-breaching party suffered **disproportionate prejudice; and whether undue economic inefficiency and waste, or an unreasonable or unfair advantage would inure to the non-breaching party**." *Id*. at 701.
>
> * * * *
>
> What is more, "the determination of 'materiality' is a complicated question of fact" that "**depends on the inherent justice of the matter**" and involves considering several factors. *Sahadi*, 706 F.2d at 196; *Wolfram P'ship, Ltd. v. LaSalle Nat'l Bank*, 328 Ill. App. 3d 207, 223 (1st Dist. 2001). Consequently, whether a breach is material generally should not be resolved at summary judgment. *Sahadi*, 706 F.2d at 196–97; *Wolfram P'ship*, 328 Ill. App. 3d at 223; *Peoria Partners, LLC v. Mill Grp., Inc.*, No. 15 C 6680, 2015 WL 8989675, at *4 (N.D. Ill. Dec. 16, 2015). Omega's briefing does not convince us that we should make an exception in this case. Notably, the primary case upon which Omega relies, *Arnhold*, involved the Seventh Circuit's review of factual findings made by a magistrate judge after a two-day evidentiary hearing. 284 F.3d at 695, 699. This is a much different procedural posture than summary judgment, **where we must view the evidence in the light most favorable to Hunter**. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 628 (7th Cir. 2020). Thus, the **first breach rule does not justify summary judgment** in Omega's favor for these reasons as well.

*Id.* at 17. (Emphasis added.)

Similar logic was applied by Judge Ellis in *Handler v. Johnson*, 2015 WL 4506712, 1 (N.D. Ill. July 22, 2015), where the court held that a short delay in the payment of sums due pursuant to a settlement was *not material*, and therefore, did not justify reopening the underlying bankruptcy to permit the plaintiff to take a judgment for the full amount originally sought. Id. The court in *Handler* held in pertinent part as follows:

> If the breach was not material, then the non-breaching party is not entitled to rescind the agreement and is not excused from its own performance under the agreement. *See Arnhold*, 284 F.3d at 700; *Capri Sun, Inc. v. Beverage Pouch Sys., Inc.*, No. 97 C 1961, 2000 WL 1036016, at *4 (N.D. Ill. July 21, 2000) ("In Illinois, a purely technical and immaterial breach of a contractual obligation will generally be insufficient to warrant contract rescission."). Materiality is a factual question, *Sahadi v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir.1983); *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 96, 225 Ill.2d 52, 310

> Ill.Dec. 274 (2006), which the bankruptcy court resolved in the Johnsons' favor. The Court considers "(1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Arnhold*, 284 F.3d at 700. **If the contract would have been made without the inclusion of the disputed provision, then the breach is not material but rather minor as long as the party performed within a reasonable period of time**. *Id.* Even if the factfinder concludes that the parties intended for the payment date to be a material provision of the agreement, "**equity will refuse to enforce such a provision when to do so would be unconscionable or would give one party an unfair advantage over the other**." *Id*. (quoting Sahadi, 706 F.2d at 197). The Court considers factors including "whether the breach defeated the bargained-for objective of the parties; whether the non-breaching party suffered disproportionate prejudice; and whether undue economic inefficiency and waste, or an unreasonable or unfair advantage would inure to the non-breaching party." *Id.* at 701.

*Handler* at 3. (Emphasis added.) Finding the defendants' payment delay was *not a material breach of the settlement*, Judge Ellis affirmed the bankruptcy court's denial of the plaintiff's motion to reopen the adversary case and enter judgment to the entire judgment amount. *Id.* at 1. *See also, Freight Train Advertising, LLC v. Chicago Rail Link, LLC*, 2013 WL 2422634, 13 (N.D. Ill. May 31, 2013) (<u>after a bench trial</u>, Judge Kendall dismissed the case finding that neither side had proven by a preponderance of the evidence that the other side had *materially* breached the contract).

In *Talisman Casualty Insurance Co, LLC v.* Jenkins *Environmental, Inc.*, 2023 WL 3981300, 13 (N.D. Ill. June 13, 2023), Magistrate Judge Fuentes *denied* the plaintiff's motion for summary judgment, holding in pertinent part as follows:

> [U]nder Illinois law, the materiality inquiry focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Elda Arnhold & Byzantio, LLC v. Ocean Atl. Woodland Corp*., 284 F.3d 693, 700 (7th Cir. 2002). This inquiry "**must take into account the totality of the circumstances and focus on the inherent justice of the matter**." *Id*. at 701.

> **The determination of whether a breach is material "is a complicated *question of fact* involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage."**
>
> *Commonwealth Edison Co. v. Elston Ave. Props., LLC*, 2017 IL App (1st) 153228, ¶ 18, 76 N.E.3d 761, 767 (2017), quoting W*illiam Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47 (2005) (quoting Sahadi, 706 F.2d at 196). "**Consequently, whether a breach is material generally should not be resolved at summary judgment**." *Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*, No. 20 C 4858, 2023 WL 3199818, at *17 (N.D. Ill. May 2, 2023), citing Sahadi, 706 F.2d at 196-97, and *Wolfram P'ship Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 223 (1st Dist. 2001).

*Id.* at 5. In *Jenkins*, despite the presentation of evidence (presumably after the parties had an opportunity to conduct discovery), the court held, "Examining the record in the light most favorable to Defendants as the non-moving parties, and construing all reasonable inferences from the evidence in their favor, the Court cannot find that Talisman has met its burden of establishing no genuine issue of material fact as to whether Defendants committed a material breach that relieved Talisman of its duties under the Performance Bond." Id. at 7. *See also, Gateway Systems, Inc. v. Chesapeake Systems Solutions, Inc.*, 836 F. Supp.2d 625, 636 (N.D. Ill. 2011) (Judge Bucklo held that the materiality of the breach of a territorial restriction in the parties' agreement constituted a disputed factual question precluding summary judgment).

In the case at bar, through the discovery process, Gold Coast will get to determine such pertinent facts as: (1) whether Mr. Blain knew when he signed the March 25, 2020 Notice of Option to Extend Lease (Complaint at Ex. 4), which extended the term of Lease until March 31, 2025, that the construction at the 1201 N. Clark Building was *not* going to be completed seven days later; (2) whether when Mr. Blain signed the Purported Lease Termination Notice on April

21, 2020 (Complaint at Ex. 5) he considered the possibility or probability that Governor Pritzker's Executive Order 2020-10, which restricted operations of non-essential businesses, such as retail phone stores, was likely to *adversely impact Sprint's retail operations* in Illinois and across the country *for weeks, months or years to come*; (3) whether in April of 2020, Sprint had begun to implement a company-wide program (the Leased Premises represented Sprint Store # 2145) to close, consolidate or downsize its retail presence in favor of online sales; (4) what actions had Sprint taken to comply with government-mandated Covid-19 restrictions, including non-essential business closure, mask and social distancing requirements; and (5) whether Sprint has historically accepted rent abatements and cooperated with landlords to resolve nominal construction delays in order to maintain operations at long-term (ten plus years) stores located in dense high-income urban markets, etc. These questions, and more, will be directed to Sprint during the discovery process in order to permit Gold Coast to properly prepare the case for a trial on the merits.

Ultimately, *at trial*, Sprint will need to *prove* that the two month delay in regaining access to the Leased Premises, in the midst of a government-mandated Covid-19- related shut-down of all non-essential businesses, such as retail phone stores, all while receiving *both* a rent abatement and additional credits for each month during the closure against future rents, caused an <u>actual injury</u> to Sprint. However, the purported materiality of the two month delay in delivering possession of the Leased Premises at the start of the Covid-19 pandemic is a question of fact defeating Sprint's Motion to Dismiss. Accordingly, for the reasons set forth herein, this Honorable Court should properly deny the Motion to Dismiss, direct Sprint to timely answer the Complaint, and permit the Plaintiff to conduct written and oral discovery on all relevant issues, including facts that bear upon the purported materiality of the short delay in delivering possession of the Leased Premises following the extensive reconstruction of the 1201 N. Clark Building.

### IV. GOLD COAST'S BRIEFLY DELAYED DELIVERY OF THE LEASED PREMISES WAS EXECUSED BY THE COVID-19 PANDEMIC PURSUANT TO THE FORCE MAJEURE PROVISIONS OF THE LEASE.

As discussed above, the construction contemplated by the parties and underpinning the March 29, 2019, First Amendment to Lease (Complaint at Ex. 3), was intended to facilitate Gold Coast completing a major renovation to the entire 1201 N. Clark Building, which included converting an existing four story office building into an eight story 98 unit apartment building with first floor retail. The project cost approximately $24 million, required structural reinforcements to the building to carry the additional four floors, and took approximately seventeen (17) months to complete. The Leased Premises was delivered to Sprint on June 16, 2020 (Complaint at Ex. 14), approximately three months *after* Governor Pritzker's first Covid-19 Executive Order dated March 20, 2020 (see Executive Order 2020-10 attached hereto as Exhibit A) closing all essential businesses. Additionally, while Sprint *argues* in its Motion to Dismiss without a factual basis in record that Gold Coast would have purportedly delivered the Leased Premises to Sprint after April 1, 2020 regardless of the deadly Covid-19 virus wreaking havoc in pre-vaccine Chicago, Sprint completely ignores *both* the impact on disruptions to *construction-related supply chains* with its origins in China (predating the rise of Covid-19 cases and deaths in the United States) the source of the Covid-19 virus, *as well as labor shortages and delays* due to pandemic-related health, safety, and social distancing regimes. As reflected in Gold Coast's May 8, 2020 Response (Complaint at Group Ex. 6) to Sprint's purported April 21, 2020 Purported Lease Termination Notice (Complaint at Ex. 5), Gold Coast provided extensive written explanations to Sprint, including ten (10) separate documents detailing the causes for the Covid-19 related delays to the construction project. Accordingly, a genuine issue of fact exists whether the supply chain delays and labor restrictions associated with Covid-19 constituted *force majeure* conditions excusing Gold Coast's timely performance under the Lease and precluding the granting of the Motion to Dismiss.

In fact, only three days after issuance of Sprint's purported April 21, 2020 Purported Lease Termination Notice (Complaint at Ex. 5), on April 24, 2020, Gold Coast, citing Sect. 10 of the March 29, 2019 First Amendment to Lease (Complaint at Ex. 3) pertaining to construction delays caused by *force majeure* events (Complaint at Ex. 7), *rejected* Sprint's claimed basis to terminate the Lease and five year extension of the Lease executed just one month prior in the March 25, 2020 Notice of Option to Extend Lease (Complaint at Ex. 4). As discussed above in Sect. III above, the question of whether the construction delays attributable to the global pandemic constitute *force majeure* conditions pursuant to the Lease and First Amendment to Lease to excuse the brief delay in delivering the Leased Premises to Sprint due to construction delays, particularly when the *facts of the Complaint are taken as true and construed in the light most favorable to Gold Coast* as the non-movant, requires Sprint's Motion to Dismiss be denied.

Finally, in mid-2023, although more than three years have passed since the first cases of Covid-19 unleashed a torrent of misery leading to more than a million deaths[2] to date in the United States alone, we must not forget the fear and uncertainty we all collectively experienced at the outset of the pandemic in early 2020 at the time the 1201 N. Clark Building was scheduled to be completed. The pandemic shook our very way of life, threw millions out of work over night, kept family members from being at their dying loved one's bedsides, and impacted our most foundational institutions. *See*, *Food and Drug Admin. v. American College Obstetricians and Gynecologist*, 141 S.Ct. 578 (2021) (abortion access), *Democratic National Committee v. Bistelmann*, 977 F.3d 639 (2020) (voting rights), *Cassell v. Snyders*, 990 F.3d 539 (2021) (free exercise of religion), and *Elim Romanian Pentecostal Church v. Pritzker*, 22 F.4th 701 (free exercise of religion).

---

[2] https://covid.cdc.gov/covid-data-tracker/#datatracker-home Last updated July 29, 2023: 1,136,473 Covid-19 deaths in the United States.

In fact, despite the advent of vaccines and the spread of "herd immunity", the pandemic <u>still</u> to this day impacts how this Honorable Court conducts its proceedings.

## V. CONCLUSION.

For the reasons set forth above, at a minimum, a genuine issue of fact exists regarding *both* the purported materiality of the completion date of the Leased Premises following the extensive construction of the 1201 N. Clark Building in the midst of a global pandemic, and whether the accompanying supply chain disruptions, labor shortages and government-mandated closures constituted *force majeure* events, requires that Sprint's Motion to Dismiss be denied.

**WHEREFORE** the Plaintiff, **GOLD COAST FLATS, LLC**, an Illinois limited liability company (heretofore referred to as the "Plaintiff," "Tenant" or "Gold Coast"), by and through its attorneys, PERL & GOODSNYDER, LTD., and as and for Plaintiff's Response, Plaintiff respectfully requests this Honorable Court deny the Motion to Dismiss brought by the Defendant, **SPRINTCOM LLC**, a Kansas limited liability company f/k/a **SPRINTCOM, INC.**, (heretofore referred to as "Defendant," "Sprint," or "Tenant") pursuant to Rule 12(b)(6), direct the Defendant to timely answer the Complaint, and order any such further, additional or alternative relief as this Honorable Court may deem fair, just and reasonable.

Respectfully submitted on behalf of Plaintiff:

**GOLD COAST FLATS**,
an Illinois limited liability company

By: */s/ Christopher M. Goodsnyder*
Christopher M. Goodsnyder, ARDC No.: 6216156
PERL & GOODSNYDER, LTD.
14 North Peoria Street
Suite 2-C
Chicago, Illinois 60607
(312) 243-4500
CGoodsnyder@PerlandGoodsnyder.com

Dated: August 5, 2023.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 5, 2023, a true and correct copy of the foregoing was delivered via electronic mail and through the Court Clerk's PACER/CM-ECF filing system to the following:

> Steven J. Yatvin
> steven.yatvin@bfkn.com
>
> Jack O. Snyder, Jr.
> jack.snyder@bfkn.com
>
> Jonathan L. Baker
> jonathan.baker@bfkn.com
>
> BARACK FERRAZZANO KIRSCHBAUM
> & NAGELBERG LLP
> 200 W. Madison St., Ste. 3900
> Chicago, IL 60606
> Firm No. 43707
> (312) 984-3100 (phone)
> (312) 984-3150 (fax)
>
> Attorneys for Defendant