```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


GOLD COAST FLATS, LLC,           )
AN ILLINOIS LIMITED COMPANY,     )
                                 )
          Plaintiff,             )
                                 )
                                 )
     v.                          )  No. 1:23-cv-03842
                                 )
                                 )
SPRINTCOM LLC, A KANSAS LIMITED  )
LIABILITY COMPANY F/K/A          )
SPRINTCOM, INC.,                 )
                                 )
          Defendant.             )
```

Order

In this action, originally filed in the Circuit Court of Cook County and removed here based on my diversity jurisdiction, plaintiff Gold Coast Flats—the landlord of commercial property located at 1201 N. Clark Street in Chicago—claims that its tenant Sprint (a common name for defendant), breached its retail lease agreement by purporting to exercise an option to terminate the lease and vacate the premises when it was not contractually entitled to do so. Plaintiff thus sues defendant for the rent it claims it was owed for the duration of the agreement. Defendant moves to dismiss the complaint on the ground that documents plaintiff attached to it establish conclusively that defendant

was indeed entitled to terminate the lease agreement. The motion is denied for the reasons below.

The relevant facts alleged in the complaint are as follows. On November 20, 2009, the parties' predecessors in interest entered into a certain Retail Lease agreement for an initial term of ten years, subject to extensions as set forth in Section 2.3 of that agreement. In March of 2019, the parties entered into a written Lease Amendment, which provided that defendant would temporarily close the leased premises beginning on or about April 1, 2019, to allow plaintiff to renovate the building. In exchange, defendant would receive rent abatement equal to a credit of 1.25 months' rent for every month the premises remained closed. Further, plaintiff agreed to reimburse defendant for all costs defendant would incur as a result of the temporary closure.

With respect to the duration of the closure, the Lease Amendment provided:

10. <u>Duration of Temporary Closure</u>. Subject to Force Majeure (as defined in the initial Lease), if Landlord fails to complete Landlord's Work within 12 months of the Initial Close Date, Tenant shall be entitled to terminate this Lease upon thirty (30) days prior written notice to Landlord. If Tenant so elects to terminate this Lease, Landlord shall reimburse Tenant for Tenant's its (sic) Costs as set forth in Paragraph 9 within 30 days of the effective date of the Lease termination.

Lease Amendment, ECF 1-1 at 139.

The Retail Lease defines Force Majeure as follows:

15.6 FORCE MAJEURE. Whenever a period of time is provided in this Lease for either party to do or perform any act or thing, that party shall not be liable or responsible for any delays due to strikes, lockouts, casualties, acts of God, war, governmental regulation or control or other causes beyond the reasonable control of said party, and if any of those events occurs, the time period shall be extended for the amount of time the party is delayed; provided that this Section shall not apply to Tenant's obligation to pay Rent, provide a security deposit, provide evidence of insurance required under this Lease, surrender the Premises when required, or deliver estoppel certificates.

Lease Agreement, ECF 1-1 at 239.

On or around March 25, 2020, with the Retail Lease scheduled to expire on March 31, 2020, and the renovation contemplated by the Lease Amendment scheduled to be completed on or around April 1, 2020, defendant exercised the option provided by Section 2.3 of the Retail Lease to extent the agreement for a period of five years, until March 31, 2025. But less than a month later, on April 21, 2020, defendant changed course and notified plaintiff that it was instead exercising its option under the Lease Amendment to terminate the Retail Lease on the ground that renovations to the premises had not been completed within the twelve-month period ending on April 1, 2020. Plaintiff rejected the notice, claiming that Governor Pritzker's Executive Order of March 20, 2020, which prohibited all but essential business operations, satisfied the Retail Lease's definition of "Force Majeure" and thus extended its time to complete the work contemplated by the Lease Amendment. Plaintiff thus sought to

3

enforce defendant's obligation to pay rent as provided by the Retail Lease.

The parties traded lawyer letters in the ensuing months in which they disagreed over issues including whether plaintiff's work on the premises was exempt from Governor Pritzker's Executive Order; whether the Executive Order prevented plaintiff from continuing work on the premises even assuming that plaintiff's operations were subject to the Order; and whether any delay in finalizing the construction was in fact caused by Covid-related governmental orders or logistical delays. *See generally*, Compl. Exh. 7-14. Plaintiff ultimately delivered the renovated premises to defendant on June 16, 2020, but defendant never took possession of the premises and maintains that it effectively terminated the Retail Lease effective May 31, 2020, i.e., forty days after notifying plaintiff of its intent to terminate. In plaintiff's view, however, the force majeure provision operated to extend the twelve-month period the Lease Amendment provided for completing the renovations, so defendant's right to terminate the Retail Lease—which, by that point, had been extended to March 31, 2025—was never triggered. Accordingly, defendant's failure to pay rent as provided in the Retail Lease amounts to a breach of that contract.

4

Defendant argues that it is entitled to dismissal because the documents attached to the complaint establish that "plaintiff will not be able to show that Covid-19 was the cause of its failure to tender the premises on time." Mot., ECF 13 at 5. In particular, defendant cites documents that, in its view, show that plaintiff was not going to meet the twelve-month deadline provided in the Lease Amendment regardless of Covid-related closures and logistical delays. But causation is ordinarily a factual question, and the breadth of the parties' disagreement as to whether and how plaintiff's operations were affected by the Executive Order and logistical delays resulting from Covid restrictions illustrates that this is not a matter appropriate for resolution on the pleadings.

                                      **ENTER ORDER:**

                                      **Elaine E. Bucklo**
                                      United States District Judge

Dated: September 27, 2023