**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GOLD COAST FLATS, LLC,** | ) | |
| **an Illinois limited company,** | ) | |
| | ) | **Case No.:23-cv-03842** |
| *Plaintiff,* | ) | |
| | ) | **Hon. Elaine E. Bucklo** |
| **-vs-** | ) | |
| | ) | |
| **SPRINTCOM, LLC,** | ) | |
| **a Kansas limited liability company** | ) | |
| **f/k/a SPRINTCOM, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFF – GOLD COAST FLATS, LLC'S
ANSWER TO DEFENDANT – SPRINTCOM, LLC'S
AFFIRMATIVE DEFENSES AND CLAIM FOR SET-OFF**

**NOW COMES** the Plaintiff, **GOLD COAST FLATS, LLC**, an Illinois limited liability company (hereinafter referred to as the "Plaintiff," "Gold Coast," or "Landlord"), by and through its attorneys PERL & GOODSNYDER, LTD., and as and for Plaintiff's Answer to Defendant's Affirmative Defenses and Claim for Set-off brought by the Defendant, **SPRINTCOM LLC**, a Kansas limited liability company f/k/a **SPRINTCOM, INC.,** (hereinafter referred to as "Defendant," "Sprint," or "Tenant"), Plaintiff states as follows:

### PLAINTIFF'S RESPONSE TO DEFENDANT'S AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE
#### (FAILURE TO MITIGATE)

1.     Landlord had years to re-let the Leased Premises after it became aware of the fact that Sprint was not going to retake possession.

**ANSWER:**  On or about March 25, 2020, with less than a week to go before the scheduled completion date of the construction at the 1201 N. Clark Building specified in the First Amendment to Lease, Sprint exercised its option to extend the Lease Term an additional five (5) years by giving written notice to Gold Coast ("March 25, 2020 Notice of Option to Extend Lease").  (Complaint at Ex. 4.) In the March 25, 2020 Notice of Option to Extend Lease, Sprint stated in pertinent part:

> This letter serves as written <u>notice to Landlord that Tenant is exercising its option to renew the above-referenced Agreement for a term of five (5) years</u> ("Option Term").  The Agreement remains in full force and effect with the <u>renewal term commencing on April 1, 2020 and ending on March 31, 2025</u>.
>
> * * * *
>
> Notwithstanding the above, Tenant will redeem any Abatement during the Temporary Closure Period and thereafter in accordance with the terms and conditions set forth in the First Amendment to Lease dated March 2019.
>
> The Agreement between the parties shall remain in full force and effect.

(Complaint at Ex. 4.)  The March 25, 2020 Notice of Option to Extend Lease was signed by James R. Blain, Director of Retail Real Estate on behalf of Sprint.  *Id.*  Mr. Blain also signed the March 29, 2019 First Amendment to Lease on behalf of Sprint.  (Complaint at Ex. 3.)  Mr. Blain also signed Sprint's April 21, 2020 letter purporting to be Sprint's termination of the Lease entitled "Termination of Lease Agreement dated November 20, 2009, as amended" ("April 21, 2020 Purported Lease Termination Notice").  (Complaint at Ex. 5.)

On numerous occasions, Plaintiff, through its counsel, including on April 24, 2020, May 8, 2020, May 18, 2020, and May 26, 2020, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease ("March 25, 2020 Notice of Option to Extend Lease"). Nonetheless, to the extent it was required to do so, Plaintiff has satisfied its duty to mitigate its losses by attempting to relet the Premises, and did so even in the face of global pandemic. Answering further, Plaintiff denies the remaining allegation(s) in Par. 1 of Defendant's First Affirmative Defense.

2.      During such time period, Landlord failed to re-let the Lease Premises.

**ANSWER**:      Plaintiff admits that Defendant wrongfully attempted to terminate the Lease and failed to timely pay rent when due and owing.  Answering further, on numerous occasions, including on April 24, 2020, May 8, 2020, May 18, 2020, and May 26, 2020April 24 Plaintiff, through its counsel, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease.  Nonetheless, to the extent it was required to do so, Plaintiff has satisfied its duty to mitigate its losses by attempting to relet the Premises, and did so even in the face of global pandemic. Answering further, Plaintiff denies the remaining allegation(s) in Par. 2 of Defendant's First Affirmative Defense.

3.      Given such failure, despite the passage of time, and taking into account the existing circumstances, Landlord failed to take reasonable or diligent efforts to mitigate its alleged damages.

**ANSWER**:      Plaintiff denies the allegations in Par. 3 of Defendant's First Affirmative Defense.

4.      Landlord accordingly cannot recover any portion of its damages that it could have avoided or reduced through reasonable efforts or diligence.

**ANSWER**:      The assertions set forth in Par. 4 of Defendant's First Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. However, to the extent the assertions set forth in Par. 4 of Defendant's First Affirmative Defense are deemed to constitute a factual allegation, Plaintiff denies the allegations in Par. 4 of Defendant's First Affirmative Defense. Answering further, Plaintiff moves to strike Defendant's First Affirmative Defense for failure to state the affirmative defense of Failure to Mitigate.

### SECOND AFFIRMATIVE DEFENSE
### (WAIVER)

1.      Landlord was aware of Sprint's intention to terminate the lease no later than April 21, 2020.

**ANSWER:** Plaintiff admits that on numerous occasions, including on April 24, 2020, May 8, 2020, May 18, 2020,  and May 26, 2020April 24, Plaintiff, through its counsel, expressly rejected Defendant's purported but improper basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease. Plaintiff admits that despite having no valid basis to do so, Defendant did send correspondence to Plaintiff on or before April 21, 2020, purportedly informing Plaintiff that Defendant was terminating the Lease.

2.      Landlord was aware of its alleged rights to rent payments since such time, and before.

**ANSWER:** Plaintiff admits that Plaintiff had an actual right to rent payments despite Defendant's attempted wrongful termination of the Lease on or before April 21, 2020. Answering further, Plaintiff states that Plaintiff informed Defendant that Defendant had no right to terminate the Lease and that Plaintiff would seek to hold Defendant liable for all rent payments that would become due and owning pursuant to the terms of the Lease and lease extension. Answering further, Plaintiff put Defendant on notice of Defendant's duty to mitigate the damages caused by Defendant's improper attempt to terminate the Lease and lease extension.

3. Landlord was aware of the fact that it was not receiving rent payments from Sprint.

**ANSWER:** Plaintiff admits that Plaintiff had an actual right to rent payments despite Defendant's attempted wrongful termination of the Lease on or before April 21, 2020. Plaintiff admits that it was aware the Defendant was wrongfully withholding rent that was due and owing. Answering further, Plaintiff put Defendant on notice of Defendant's duty to mitigate the damages caused by Defendant's improper attempt to terminate the Lease and March 25, 2020 Notice of Option to Extend Lease

4. Despite Landlord's belief that the lease was not rightfully terminated, Landlord took no action demanding payment of rent or fulfillment of Tenant's other duties under the Lease Documents.

**ANSWER:** Plaintiff denies the allegations in Par. 4 of Defendant's Second Affirmative Defense. Answering further, Plaintiff put Defendant on notice of Defendant's duty to mitigate the damages caused by Defendant's improper attempt to terminate the Lease and March 25, 2020 Notice of Option to Extend Lease.

5.      Although the Complaint contains many references to the parties' correspondence, conspicuously absent from Landlord's allegations and the exhibits attached to the Complaint are instances of Landlord seeking to enforce its alleged lease rights to collect rent or instances of Landlord demanding the same.

**ANSWER:**  Plaintiff moves to strike what purports to be factual allegations in Par. 5 of Defendant's Second Affirmative Defense, but which is really Defendant's closing arguments. Answering further, the allegations in the Complaint and the exhibits attached thereto speak for themselves.   Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent, nor that any provision of the Lease provides for the same and conspicuously absent form Defendant's affirmative defense(s) are any such references to any term of the lease, as none exist. Answering further, Plaintiff put Defendant on notice of Defendant's duty to mitigate the damages caused by Defendant's improper attempt to terminate the Lease and lease extension

6.      For example, the Complaint makes no reference to any notice of default from Landlord to Sprint, such as for failure to pay rent when allegedly due. In fact, Landlord never gave notice of any default to Sprint for non-payment of rent.

**ANSWER:**  Plaintiff moves to strike what purports to be factual allegations in Par. 6 of Defendant's Second Affirmative Defense, but which is really Defendant's closing arguments. Answering further, the allegations in the Complaint and the exhibits attached thereto speak for themselves.   Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent or that Plaintiff has waived any claims against the Defendant, nor that any provision of the Lease provides for the same and conspicuously absent form Defendant's affirmative defense(s) are any such references to any term of the lease, as none

exist. Answering further, Plaintiff put Defendant on notice of Defendant's duty to mitigate the damages caused by Defendant's improper attempt to terminate the Lease and lease extension.

7. Landlord's conduct in failing to pursue its alleged rights for a period of nearly three years, between purporting to return the premises to Sprint and the filing of this suit, acted as a waiver of Landlord's rights.

**ANSWER:** Plaintiff denies the allegations in Par. 7 of Defendant's Second Affirmative Defense. Answering further, Plaintiff moves to strike Defendant's Second Affirmative Defense for failure to state the affirmative defense of waiver.

### THIRD AFFIRMATIVE DEFENSE
### (ESTOPPEL)

1. Landlord was aware of Sprint's intention to terminate the lease no later than April 21, 2020.

**ANSWER:** Plaintiff admits that on numerous occasions, Plaintiff, through its counsel, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease. Answering further, Plaintiff admits that despite having no valid basis to do so, Defendant did send correspondence to Plaintiff on or before April 21, 2020, purportedly informing Plaintiff that Defendant was terminating the Lease. Answering further, on multiple occasions April 24Plaintiff, through its counsel, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease.

2. Despite Landlord's belief that the lease was not rightfully terminated, Landlord took no action demanding payment of rent or fulfillment of Tenant's other duties under the Lease Documents.

**ANSWER:** Plaintiff denies the allegations in Par. 2 of Defendant's Third Affirmative Defense.

3.     Instead, as Landlord has alleged in the Complaint, Landlord disputes that the Lease Agreement was ever terminated. (See, for example, Paragraphs 31 and 45 of the Complaint.) Landlord has disputed such termination all the way back to April 2020. (*Id.*)

**ANSWER:** Plaintiff admits that the Defendant did not have a valid basis to terminate the Lease, including Defendant's attempted reliance on the non-material failure of Plaintiff to deliver the Leased Premises to Defendant on April 1, 2020, in the midst of a global pandemic, a mere five days after James R. Blain, Director of Retail Real Estate on behalf of Sprint, served Plaintiff with the March 25, 2020 Notice of Option to Extend Lease was signed.   (Complaint at Ex. 4.) Answering further, Defendant is liable to Plaintiff for the damages alleged in the Complaint.

4.     Landlord's denial that the Lease was terminated is inconsistent with Landlord's claim now that it has a right to accelerate the full rent due over any remaining lease term, because Landlord may only accelerate rent following its termination of the lease pursuant to an Event of Default. (Lease Agreement, 9.1(B).)

**ANSWER**:     The assertions set forth in Par. 4 of Defendant's Third Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. However, to the extent the assertions set forth in Par. 4 of Defendant's Third Affirmative Defense are deemed to constitute a factual allegation, Plaintiff denies the allegations in Par. 4 of Defendant's Third Affirmative Defense. Answering further, as additional confirmation of notice to Defendant, the Complaint provided the Defendant with a summary of Defendant's various breaches of the Lease.

5.      Landlord's position regarding non-termination of the lease is inconsistent with its claim for accelerated rent.

**ANSWER**:     The assertions set forth in Par. 5 of Defendant's Third Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. However, to the extent the assertions set forth in Par. 5 of Defendant's Third Affirmative Defense are deemed to constitute a factual allegation, Plaintiff denies the allegations in Par. 5 of Defendant's Third Affirmative Defense.

6.      Moreover, as evidenced by its conduct now in pursuing this action, Landlord must have known for years that it would pursue Sprint for the full amount of rent over a five-year period. Landlord concealed such intentions for nearly three years.

**ANSWER:**  Plaintiff moves to strike what purports to be factual allegations in Par. 6 of Defendant's Third Affirmative Defense, but which is really Defendant's closing arguments. Answering further, the allegations in the Complaint and the exhibits attached thereto speak for themselves.   Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent.  Answering further, to the extent the assertions set forth in Par. 6 of Defendant's Third Affirmative Defense are deemed to constitute a factual allegation, Plaintiff denies that Plaintiff's conduct in mitigating its damages relieved the Defendant's obligations under the Lease. Answering further, Plaintiff denies that Plaintiff concealed its cause of action against the Defendant. Answering further, Plaintiff denies that the Defendant relied to its detriment on Plaintiff's conduct in pursuing its rights under the Lease. Answering further, Plaintiff's counsel's correspondence refuting Defendant's wrongful attempt to terminate the Lease and demanding the Defendant take all necessary actions to mitigate any damages caused to the Plaintiff by Defendant's breach of the Lease.

7.     It was reasonable for Sprint to rely on Landlord's silence as an indication that Landlord did not believe it had a right to pursue Sprint for accelerated rent

**ANSWER:** Plaintiff denies the allegations in Par. 7 of the Defendant's Third Affirmative Defense.  Answering further, pursuant to Sections 9.5 and 9.6 of the Lease, it was not reasonable for Sprint to construe Plaintiff's conduct as a waiver of its right to recover unpaid rent through the case at bar knowing that Sprint was neither paying rent nor mitigated its damages by providing a suitable subtenant to lease premises.  Answering further, Plaintiff denies that Sprint relied to its detriment upon any action or inaction taken by the Plaintiff, especially since Plaintiff specifically contested Sprint's right to terminate the Lease and informed Sprint that they were responsible for the Lease payments through the remainder of the Lease and inquired as to whether Sprint would attempt to mitigate those damages.  Answering further, pursuant to the terms of the Lease, including, but not limited to Sections 9.1(C) and 9.6 of the Lease, Plaintiff properly brought suit against Sprint for its various contractual breaches, including the non-payment of rent du Plaintiff.

8.     Sprint's reliance on such silence was to its detriment. Had Landlord timely issued a default notice or terminated the lease following an alleged Event of Default and then sought to accelerate rent in a timely manner, Sprint could have taken actions years ago in response to such matters.

**ANSWER:** Plaintiff denies the allegations in Par. 8 of the Defendant's Third Affirmative. Answering further, Sprint's allegation that it purportedly relied to its detriment is a conclusory allegation lacking any factual support to how Sprint purportedly relied to its detriment.  Answering further, as Sprint neither paid Plaintiff rent, nor tendered any suitable sub-tenants, Sprint cannot demonstrate any losses, mitigations or detriment.  Answering further, pursuant to Sections 9.5 and 9.6 of the Lease, it was not reasonable for Sprint to construe Plaintiff's conduct as a waiver of its right to recover unpaid rent through the case at bar knowing that Sprint was neither paying rent

nor mitigated its damages by providing a suitable subtenant to lease premises. Answering further, Plaintiff gave Defendant notice of its intentions to hold Defendant liable for any breach of the lease and refuted Defendant's purported basis to terminate the Lease and inquired as to whether Sprint would be attempting to mitigate the damages.

9.      Landlord accordingly is estopped from recovering damages.

**ANSWER:** Plaintiff denies the allegations in Par. 9 of the Defendant's Third Affirmative. Answering further, Plaintiff moves to strike Defendant's Third Affirmative Defense for failure to state the affirmative defense of estoppel.

### FOURTH AFFIRMATIVE DEFENSE
### (FAILURE OF CONDITION PRECEDENT)

1.      Under the Lease Agreement, Landlord may only accelerate rent upon the termination of the Lease Agreement by Landlord following an Event of Default. (Lease Agreement, 9.1(B).)

**ANSWER:** The assertions set forth in Par. 1 of Defendant's Fourth Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. Answering further, the terms set forth in the Lease speak for themselves. Answering further, Plaintiff admits that Defendant's conduct constituted a breach of the Lease. Answering further, Plaintiff admits that Defendant is liable to Plaintiff for the damages Plaintiff sustained as a proximate cause of Defendant's breach of the Lease. Answering further, pursuant to Sections 9.5 and 9.6 of the Lease, the Defendant is liable for all unpaid rent due as a result of Defendant's breach of the lease. Answering further, Plaintiff denies the remaining allegations in Par. 1 of the Fourth Affirmative Defense.

2.      Under Section 9.1(A)(iv) of the Lease Amendment, non-payment of rent only becomes an Event of Default if it continues for more than 5 business days after notice.

**ANSWER:** The assertions set forth in Par. 2 of Defendant's Fourth Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. Answering further, the terms set forth in the Lease speak for themselves. Answering further, Plaintiff admits that Defendant's conduct constituted a breach of the Lease. Answering further, Plaintiff admits that Defendant is liable to Plaintiff for the damages Plaintiff sustained as a proximate cause of Defendant's breach of the Lease. Answering further, Plaintiff denies the remaining allegations in Par. 2 of the Fourth Affirmative Defense to the extent they purport to allege that Defendant was not on notice that it was in breach of the Lease, which was provided to the Defendant on multiple occasions, including but not limited to on April 24, 202, May 8, 2020, May 18, 2020, and on May 26, 2020. Answering further, Plaintiff denies that 9.1(A)(iv) of the Lease bars the Plaintiff from recovering the unpaid rent Defendant has failed to plaintiff. Answering further, pursuant to Sections 9.5 and 9.6 of the Lease, the Defendant is liable for all unpaid rent due as a result of Defendant's breach of the Lease.

3.      However, Landlord never provided Sprint with a notice of default for non-payment of rent.

4.      **ANSWER:** Plaintiff denies the remaining allegations in Par. 3 of the Fourth Affirmative Defense. On April 24, 2020, May 8, 2020, May 18, 2020 and on May 26, 2020, Plaintiff, through its counsel, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease. Answering further, the Complaint provided the Defendant with additional notice of default. Therefore, Landlord failed to fulfill the conditions precedent to an Event of Default, which in turn means that Landlord failed to fulfill the conditions precedent to accelerate rent upon termination of the Lease Agreement.

**ANSWER:** The assertions set forth in Par. 4 of Defendant's Fourth Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. Answering further, the terms set forth in the Lease speak for themselves. Answering further, Plaintiff admits that Defendant's conduct constituted a breach of the Lease and notice was given to Defendant at a minimum on April 24, 2020, May 8, 2020, May 18, 2020 and on May 26, 2020 Plaintiff, through its counsel, expressly rejected Defendant's purported basis to terminate the Lease or the extension of the Lease exercised by the Plaintiff in the March 25, 2020 Notice of Option to Extend Lease. Answering further, pursuant to Sections 9.5 and 9.6 of the Lease, the Defendant is liable for all unpaid rent due as a result of Defendant's breach of the Lease. Answering further, the Complaint provided the Defendant with additional notice of default. Answering further, Plaintiff admits that Defendant is liable to Plaintiff for the damages Plaintiff sustained as a proximate cause of Defendant's breach of the Lease. Answering further, Plaintiff denies the remaining allegations in Par. 4 of the Fourth Affirmative Defense to the extent they purport to allege that Defendant was not on notice that it was in breach of the Lease.

5.      Because Landlord failed to perform a condition precedent, Landlord cannot recover any portion of its damages that arise from acceleration of rent.

**ANSWER:** The assertions set forth in Par. 5 of Defendant's Fourth Affirmative Defense constitute a conclusion of law and not a factual allegation to which a response is properly due, and should therefore be stricken. Answering further, the terms set forth in the Lease speak for themselves. Answering further, Plaintiff admits that Defendant's conduct constituted a breach of the Lease. Answering further, Plaintiff admits that Defendant is liable to Plaintiff for the damages Plaintiff sustained as a proximate cause of Defendant's breach of the Lease. Answering further, Plaintiff denies the remaining allegations in Par. 5 of the Fourth Affirmative Defense to the extent they purport to allege that Defendant was not on notice that it was in breach of the Lease.

Answering further, Plaintiff moves to strike Defendant's Fourth Affirmative Defense for failure to state the affirmative defense of failure of condition precedent.

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM OF SET-OFF

### NATURE OF THE DISPUTE

1.      This dispute arises from the terms of a Lease Amendment entered into by Gold Coast Flats, LLC ("Landlord") and SprintCom LLC, f/k/a SprintCom, Inc. ("Sprint" or "Tenant") on or about March 2019.

**ANSWER:** Plaintiff admits that it filed this action against the Defendant due to the Defendant's breach of Defendant's commercial lease with Plaintiff including the March 25, 2020 Notice of Option to Extend Lease.

2.      Under the terms of the Lease Amendment, Sprint is entitled to more than a year's worth of rent credits and other payments as compensation for Sprint's voluntary closure of its operations at the Leased Premises to permit Landlord to complete a sizeable renovation of the building located at 1201 North Clark Street.

**ANSWER:** Plaintiff admits that had Defendant fully complied with the terms of the commercial lease with Plaintiff, including the March 25, 2020 Notice of Option to Extend Lease, and the March 29, 2019 First Amendment to Lease on behalf of Sprint (see Complaint at Ex. 3.) the Defendant would have been entitled to certain rights to rent credits as defined in these documents collectively. Plaintiff denies the remaining allegations of Paragraph 2 to the extent that they are inconsistent with the terms of the Lease.

3.      To date, Landlord has not made the required payments under the terms of the Lease Amendment and must be made to pay damages in the amount required under the Lease Amendment and related Lease Documents.

**ANSWER:** Plaintiff denies the allegations as contained in Paragraph 3. Answering further, due to Defendant's material breach of Defendant's contractual duties and obligations set forth in the Lease, Lease Amendment and Lease Documents, Defendant has forfeited any corresponding contractual benefits.

### THE PARTIES

4.      Landlord is an Illinois-registered limited liability company.

**ANSWER:** Plaintiff admits the allegations in Par. 4 of the Defendant's Counterclaim of Set-Off.

5.      Sprint is a Kansas limited liability company.

**ANSWER:** Plaintiff admits the allegations in Par. 5 of the Defendant's Counterclaim of Set-Off.

6.      As alleged in the Notice of Removal filed by Sprint (Dkt. 1), Landlord is a citizen of Illinois, and Sprint is a citizen of Delaware and Washington State, for purposes of 28 U.S.C. § 1332.

**ANSWER:** Plaintiff admits the allegations in Par. 6 of the Defendant's Counterclaim of Set-Off.

### JURISDICTION AND VENUE

7.      This action was removed to this Court on June 16, 2023, pursuant to 28 U.S.C. §§ 1441 and 1446. (Dkt. 1).

**ANSWER:** Plaintiff admits the allegations in Par. 7 of the Defendant's Counterclaim of Set-Off.

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a). The counterclaim raised below forms part of the same case or controversy as the claims over which the Court has original jurisdiction under 28 U.S.C. § 1332(a).

**ANSWER:**  Plaintiff admits the allegations in Par. 8 of the Defendant's Counterclaim of Set-Off.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the Leased Premises are located in this District.

**ANSWER:**  Plaintiff admits the allegations in Par. 9 of the Defendant's Counterclaim of Set-Off.

FACTS

10.      On or about November 16, 2009, Landlord entered into a Lease Agreement with Clearwire Communications, LLC, regarding retail space located at 1201 North Clark Street ("the Premises").

**ANSWER:**  Plaintiff admits the allegations in Par. 10 of the Defendant's Counterclaim of Set-Off.

11.      The Lease Agreement provided for an Initial Lease Term of 10 years.

**ANSWER:**  Plaintiff admits the allegations in Par. 11 of the Defendant's Counterclaim of Set-Off.

12.      Under the Lease Agreement, Fixed Minimum Rent for years 6-10 of the Initial Lease Term was set at $12,217 per month, and $146,606 annually.

**ANSWER:** Plaintiff admits the allegations in Par. 12 of the Defendant's Counterclaim of Set-Off to the extent that Sprint alleges that Gold Coast entered into the Lease Agreement on or about November 16, 2009 with Clearwire Communications, LLC. Answering further, Plaintiff refers to the Lease Agreement for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease Agreement.

13.     On or about September 9, 2011, Clearwire Communications, LLC assigned the lease to Sprint.

**ANSWER:** Plaintiff admits the allegations in Par. 13 of the Defendant's Counterclaim of Set-Off.

 On or about March 2019, Sprint and Landlord entered into a written amendment to the Lease Agreement ("Lease Amendment").

14.     **ANSWER:**     Plaintiff admits the allegations in Par. 14 of the Defendant's Counterclaim of Set-Off to the extent that Sprint alleges that Gold Coast entered into the Lease Amendment on or about March 2019. Answering further, Plaintiff refers to the Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease Amendment. At the time of the Lease Amendment's execution, Sprint was about to enter year 10 of the Initial Lease Term.

**ANSWER:** Plaintiff admits the allegations in Par. 15 of the Defendant's Counterclaim of Set-Off.

15.     Under the Lease Amendment, Sprint agreed to close its operations at the Premises to permit Landlord to complete renovations on the building located at 1201 North Clark Street.

16.    **ANSWER:**    Plaintiff admits the allegations in Par. 16 of the Defendant's

Counterclaim of Set-Off to the extent that Sprint alleges that Sprint agreed to close its operations

at the Premises to permit Landlord to complete renovations on the building located at 1201 North

Clark Street. Answering further, Plaintiff refers to the Lease Amendment for its complete and

accurate contents and denies the allegations in this paragraph to the extent they conflict with the

language of the Lease Amendment.  The Lease Amendment provided for the following regarding

Tenant's rent and other payment obligations during the closure:

> 2.    Tenant Rent During Closure: During the Temporary Closure Period, Tenant and Landlord agree to suspend Tenant's requirement to pay Fixed Minimum Rent and Tenant's Pro Rata Share of Operating Expenses and Insurance Premiums.
>
> 3.    Rent Abatement During Closure: Landlord agrees to credit Tenant 1.25 Months of Fixed Minimum Rent for every Month during the Temporary Closure Period and until all scaffolding on and around the Premises is completely removed (the "Abatement"). The credit amount for partial months will be prorated by dividing the number of days closed (numerator) by the total number of days in that certain month (denominator).
>
> . . .
>
> 9.    Tenant Reimbursement for Costs:  In the event any reasonable costs are directly borne by Tenant, in relation to the temporary closure and re-opening of the Premises as evidenced by Tenant's presentation to Landlord of invoices and other evidence of the amount of such out of pocket costs (the "Costs"), Tenant shall have the right to offset the Costs from the Fixed Minimum Rent until Tenant has recouped it's [sic] Costs.  In the event the Lease Term expires, or is sooner terminated, before Tenant has recuperated its Costs, Landlord will make payment to Tenant of the outstanding balance within thirty (30) days of expiration of the Term.

**ANSWER:**  Plaintiff admits the allegations in Par. 17 of the Defendant's Counterclaim of

Set-Off to the extent that Sprint alleges that the parties entered into the Lease Amendment.

Answering further, Plaintiff refers to the Lease Amendment for its complete and accurate contents

and denies the allegations in this paragraph to the extent they conflict with the language of the

Lease Amendment. Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent.

17.     The Lease Amendment further provided for a $5,000 credit related to Sprint's removal and reinstallation of business signage.

**ANSWER:** The terms of the Lease Amendment speak for themselves.  Answering further, Plaintiff refers to the Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease Amendment Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent.

18.     Sprint closed its operations at the Premises on or about April 1, 2019.

**ANSWER:** Plaintiff admits the allegations in Par. 19 of the Defendant's Counterclaim of Set-Off.

19.     Under the Lease Amendment, Landlord had twelve (12) months to complete the renovations and return possession of the premises to Sprint, meaning that Landlord was to complete the construction on or before April 1, 2020.

20.     **ANSWER:**    Plaintiff denies that Defendant has accurately stated all of the applicable terms and conditions governing the renovations and return of possession of the premises to Sprint. Answering further, Plaintiff refers to the Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease Amendment.  In the event the renovations were not complete on or before April 1, 2020, Sprint had a right to terminate the Lease.

**ANSWER:** Plaintiff denies the allegations in Par. 21 of the Counterclaim of Set-Off.

21.     Landlord did not complete the construction by April 1, 2020.

**ANSWER:**  Plaintiff admits that due to the global pandemic and other conditions comprising the *force majeure* provisions of the Lease, Landlord did not complete the construction by April 1, 2020.  Answering further, on or about March 25, 2020, with less than a week to go before the scheduled completion date of the construction at the 1201 N. Clark Building specified in the First Amendment to Lease, Sprint exercised its option to extend the Lease Term an additional five (5) years by giving written notice to Gold Coast ("March 25, 2020 Notice of Option to Extend Lease") which superseded the First Amendment to the Lease. .  (Complaint at Ex. 4.)  Answer further, Defendant was informed by Plaintiff that the due to the global pandemic the construction at the building would not be completed by April 1, 2020.  Answering further, the premise was delivered to the Defendant within days of Defendant's asserted May 31, 2020 lease "Termination Date" referenced in Defendant's April 21, 2020 correspondence

22.     On or about April 21, 2020, Sprint exercised its right to terminate the Lease Agreement and notified Landlord that the Lease Agreement would be terminated as of May 31, 2020.

**ANSWER:**  Plaintiff admits that on or about April 21, 2020, Sprint sent correspondence purporting to exercise a right to terminate the Lease Agreement wherein Defendant claimed the that the Lease Agreement would be terminated as of May 31, 2020.  Plaintiff denies the purported notice of termination was effective.  Plaintiff denies the remaining allegations in Par. 23 of the Counterclaim of Set-Off.

23.     To date, Landlord has failed to provide Sprint with any payment related to the Rent Abatement, Costs, or signage under the Lease Amendment.

**ANSWER:** Plaintiff admits that the Defendant did not have a valid basis to terminate the Lease, including Defendant's attempted reliance on the non-material failure of Plaintiff to deliver the Leased Premises to Defendant on April 1, 2020, in the midst of a global pandemic, a mere five days after James R. Blain, Director of Retail Real Estate on behalf of Sprint, served Plaintiff with the March 25, 2020 Notice of Option to Extend Lease was signed. (Complaint at Ex. 4.) Due to Defendant's material breach of Defendant's contractual duties and obligations set forth in the Lease, Lease Amendment and Lease Documents, Defendant has forfeited any corresponding contractual benefits. Answering further, Plaintiff refers to the Lease and Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease and Lease Amendment.

### COUNT I
### (SETOFF OR OFFSET)

24.　　Sprint realleges and incorporates paragraphs 1–24 as if set forth fully herein.

**ANSWER:** Plaintiff realleges and incorporates its answers to paragraphs 1–24 the Counterclaim of Set-Off as if set forth fully herein.

25.　　The Lease Agreement provides for certain categories of credits or other amounts that are due to Sprint regardless of the fact that the Lease Agreement was terminated in 2020, as well as certain categories that may only be recoverable as deductions against a claim by Landlord. Such amounts collectively include, without limitation, credits for rent abatement under the Lease Amendment, a signage credit, and any payments Sprint made during any abatement period.

26.     **ANSWER:** The allegations in the Complaint and the exhibits attached thereto speak for themselves.  Answering further, the Plaintiff denies that Defendant was relieved from its contractual allegations in the Lease to pay rent.  Plaintiff admits that the Defendant did not have a valid basis to terminate the Lease, including Defendant's attempted reliance on the non-material failure of Plaintiff to deliver the Leased Premises to Defendant on April 1, 2020, in the midst of a global pandemic, a mere five days after James R. Blain, Director of Retail Real Estate on behalf of Sprint, served Plaintiff with the March 25, 2020 Notice of Option to Extend Lease was signed. (Complaint at Ex. 4.) Due to Defendant's material breach of Defendant's contractual duties and obligations set forth in the Lease, Lease Amendment and Lease Documents, Defendant has forfeited any corresponding contractual benefits. Answering further, Plaintiff refers to the Lease and Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease and Lease Amendment. Sprint is entitled to certain amounts owed under the provisions of the Lease Amendment regardless of the outcome of Landlord's claim.

     **ANSWER:**  Plaintiff denies the allegations in Par. 27 of the Counterclaim of Set-Off.

27.     In the alternative, Sprint is entitled to offset, against any damages proven by Landlord, any credit or other amounts due to Sprint.

     **ANSWER:**  Due to Defendant's material breach of the terms and conditions of the Lease and Lease Amendment, Plaintiff denies that Sprint is entitled to offset, against any damages proven by Plaintiff.  Answering further, Plaintiff denies the remaining allegations in Par. 28 of the Counterclaim.

28.     Landlord acknowledges that it owes certain credits to Sprint under the Lease Amendment. (Complaint, Exhibit 15.)

**ANSWER:** Plaintiff denies that Defendant has accurately stated all of the applicable terms and conditions governing the renovations and return of possession of the premises to Sprint or the all of the applicable allegations in the Complaint and exhibits attached thereto. Answering further, Plaintiff refers to the Lease and Lease Amendment for its complete and accurate contents and denies the allegations in this paragraph to the extent they conflict with the language of the Lease and Lease Amendment. Answering further, due to Defendant's material breach of Defendant's contractual duties and obligations set forth in the Lease, Lease Amendment and Lease Documents, Defendant has forfeited any corresponding contractual benefits.

**WHEREFORE** the Plaintiff, **GOLD COAST FLATS, LLC**, an Illinois limited liability company (heretofore referred to as the "Plaintiff," "Tenant" or "Gold Coast"), by and through its attorneys, PERL & GOODSNYDER, LTD., and as and for Plaintiff's Answer to Defendant's Affirmative Defenses and Counterclaim for Set-off brought by the Defendant, **SPRINTCOM LLC**, a Kansas limited liability company f/k/a **SPRINTCOM, INC.**, (hereinafter referred to as "Defendant," "Sprint," or "Tenant"), the Plaintiff respectfully requests this Honorable Court enter judgment in Plaintiff's favor and against the Defendant on the above stated Affirmative Defenses and/or Claim for set-off, and also award the Plaintiff all of the damages sought in the Complaint, together with Plaintiff's reasonable attorney's fees and prejudgment interest, and order any such further, additional or alternative relief as this Honorable Court may deem fair, just and reasonable.

Respectfully submitted on behalf of Plaintiff:

**GOLD COAST FLATS**,
an Illinois limited liability company

By:    */s/ Christopher M. Goodsnyder*
        Christopher M. Goodsnyder, ARDC No.:  6216156
        PERL & GOODSNYDER, LTD.
        14 North Peoria Street
        Suite 2-C
        Chicago, Illinois 60607
        (312) 243-4500
        CGoodsnyder@PerlandGoodsnyder.com

Dated: November 15, 2023.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on <u>November 15, 2023</u>, a true and correct copy of the foregoing was delivered via electronic mail and through the Court Clerk's PACER/CM-ECF filing system to the following:

Steven J. Yatvin
steven.yatvin@bfkn.com

Jack O. Snyder, Jr.
jack.snyder@bfkn.com

Murphy Olivia Glass
olivia.glass@bfkn.com

BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG LLP
200 W. Madison St., Ste. 3900
Chicago, IL 60606
Firm No. 43707
(312) 984-3100 (phone)
(312) 984-3150 (fax)

Attorneys for Defendant